IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES J. CANTER III, ) | |
|     Petitioner, ) | Case No. 7:23-cv-00004 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| CHADWICK S. DOTSON,[1] ) | Chief United States District Judge |
|     Respondent. ) | |

**MEMORANDUM OPINION**

James J. Canter III, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges the judgment entered against him in the Circuit Court of Washington County on May 6, 2019. The respondent has filed a motion to dismiss to which Canter has responded, making the matter ripe for disposition. After reviewing the record, the court concludes that the respondent's motion must be granted.

## I. Background

On January 9, 2017, Canter was arrested for the murder of his girlfriend, A.L. CCR[2] at 1, 84. During a preliminary hearing on November 9, 2017, the Washington County Juvenile and Domestic Relations District Court found that probable cause had been established and certified the case to the grand jury on a charge of murder in the first degree, in violation of Virginia Code § 18.2-32, and a charge of using a firearm in the commission of a felony, in

---

[1] Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, "the petition must name as respondent the state officer who has custody" of the petitioner. That officer is Chadwick S. Dotson, the current Director of the Virginia Department of Corrections. Thus, Dotson is the proper respondent, and the Clerk shall update the docket accordingly.

[2] References to the record in Commonwealth v. Canter, No. CR17001020-00 (Washington Cnty. Cir. Ct.), are abbreviated "CCR," followed by the page number typed in the lower right corner of each page.

violation of Virginia Code § 18.2-53.1. Id. at 668–69. On January 23, 2018, the grand jury indicted Canter on both charges. Id. at 176.

The case was originally set for trial on February 26, 2018. Id. at 179. The trial court continued the trial three times at the request of defense counsel.[3] Id. at 179, 181, 244. In connection with the first continuance, Canter signed a preprinted waiver form purporting to "waive state and federal constitutional and statutory speedy trial deadline calculations caused by any continuances." Id. at 180.

The case proceeded to trial on January 14, 2019. On January 16, 2019, a jury found Canter guilty of both charges. Id. at 410–411. On May 6, 2019, the trial court sentenced Canter to a total term of imprisonment of 63 years. Id. at 484–85.

Canter appealed his convictions to the Court of Appeals of Virginia. A three-judge panel of the Court of Appeals affirmed Canter's convictions on February 19, 2020, id. at 563, and on September 2, 2020, the Supreme Court of Virginia entered an order refusing his petition for appeal, id. at 564. On November 25, 2020, the Supreme Court of Virginia denied Canter's petition for rehearing. Id. at 565.

On direct appeal, the Court of Appeals of Virginia summarized the evidence at trial as follows:

> [T]he evidence established that about 8:30 p.m. on January 8, 2017, [Canter], Sam Lamon, and three other men each ingested LSD at a friend's apartment. When he had taken LSD previously, [Canter] had become more jovial, but on this occasion he became "agitated and upset." To get a respite from [Canter's] "antagonistic" behavior, his friends went into the bedroom and locked the door. [Canter] knocked several times before kicking

---

[3] The trial court appointed Barry L. Proctor to represent Canter. Another attorney, Mark Haugh, voluntarily agreed to assist Proctor at trial.

down the door. Once inside the bedroom, [Canter] proposed that they have a group orgy and started to unbuckle his belt, but his friends refused to participate. [Canter] left the apartment about 12:40 a.m. on January 9, 2017, after he was told that he would have to pay for the broken door. Leaving his phone, coat, car keys, and car at the apartment, he walked the short distance to the house he shared with his girlfriend, A.L., and Lamon.

En route to his residence, [Canter] encountered Virginia State Police Trooper Christopher Wyrick, who was investigating a car accident. [Canter] first told Wyrick that he did not want to hurt anyone and then said he wanted to go home and have sex with his girlfriend. Wyrick did not think that [Canter] was under the influence of alcohol or drugs but that he had a "mental issue." When [Canter] said that he lived across the street, Wyrick told him to go home. A.L. sent a text at about 1:00 a.m. to Lamon to tell him that [Canter] was with her.

About 3:00 a.m., [Canter] returned to his friend's apartment to retrieve the items he had left there. He appeared to be "significantly" calmer then, and he had his dog with him. [Canter] called his mother at 2:26 a.m. and told her that "something bad" had happened to A.L. [Canter] then drove to his mother's house. Mrs. Canter told [Canter] that they needed to report the incident, but before going to the sheriff's department, she and [Canter] drove to his house where she went inside and he stayed in the car. She testified that she wanted to determine that something had happened because [Canter] was "rambling" and that she did not want to make a false report to the police. After seeing A.L.'s body in the kitchen, Mrs. Canter and [Canter] drove to the regional jail, thinking it was the sheriff's office. They arrived after 3:30 a.m. on January 9, 2017. [Canter] was not wearing the same pants that Trooper Wyrick had seen him wearing several hours earlier, and his hair looked "damp."

Detective Roop began interviewing [Canter] at the jail at about 5:20 a.m. and advised him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), at 5:55 a.m. [Canter] said that he understood his rights and was willing to talk to Roop. [Canter] did not appear to be intoxicated, and he initially denied having used any drugs. Later in the conversation, however, [Canter] admitted that he had used LSD earlier, but he said that the effects had worn off. He claimed that he did not know what had happened to A.L.; he said that he had found her on the kitchen floor in a pool of blood

3

> when he came home from his friend's apartment and he went to his mother's because he was scared. He later remembered that they had talked when he returned home. He told Roop fourteen times that he must have shot A.L. because no one else was there but he did not remember doing so. [Canter] said that he owned a .22 Ruger pistol that he kept on a bookshelf in the living room and that he recalled seeing the gun on the floor by the sofa. A crime scene investigator found the gun stuck between the sofa cushions.
>
> A.L. was shot nine times in the head, face, neck, arm, and leg; the face and neck wounds showed stippling, which indicated that they had been inflicted at close range. The two head wounds were lethal, and the other body wounds contributed to the overall blood loss.

Id. at 556–568 (footnotes omitted). The Commonwealth also presented evidence establishing that Canter consented to having his hands tested for gunshot residue by Detective Roop and that gunshot residue was found on both of Canter's hands. Id. at 1273, 1414, 1885, 2034.

On December 6, 2021, Canter filed a petition for a writ of habeas corpus in the Circuit of Washington County, raising the following claims of ineffective assistance of counsel:

> (1) Trial counsel were ineffective for failing to file a motion for a speedy trial. Trial counsel should not have agreed to the Commonwealth's continuances. Instead, counsel should have invoked Virginia Code § 19.2-243, since Canter was incarcerated for two years before his case went to trial.
>
> (2) Trial counsel were ineffective for failing to timely file a motion for mistrial.
>
> (3) Trial counsel were ineffective for failing to request a fingerprint expert to test the firearm for comparison prints, since Canter was not sure whether he fired the weapon that killed the victim.

4

HR[4] at 7–20. The state habeas court dismissed the petition on May 2, 2022, concluding that Canter had not met his burden of establishing ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984). Id. at 563–67. The Supreme Court of Virginia refused Canter's subsequent petition for appeal on December 1, 2022.

On or about January 3, 2023, Canter filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. Liberally construed, the petition asserts two of the same claims that were raised in Canter's state habeas petition: (1) that trial counsel were ineffective for failing to invoke Canter's right to a speedy trial, and (2) that trial counsel were ineffective for failing to request the services of an expert to test the firearm used to kill the victim. See Written Pet., ECF No. 1-1, at 3–7.

## II. Standards of Review

A court "shall entertain an application for a writ of habeas corpus" filed by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is generally required to exhaust all state court remedies before filing a habeas petition under § 2254. Id. § 2254(b). "Once a state prisoner has exhausted his claims in state court and filed a federal habeas petition, if a state court has already resolved the merits of a claim for post-conviction relief, a federal court may not grant a writ of habeas corpus under § 2254 unless the state court's decision meets the requirements of § 2254(d)." Williams v. Stirling, 914 F.3d 302, 311 (4th Cir. 2019) (internal quotation marks, brackets, and citation omitted).

---

[4] References to the habeas record in Canter v. Department of Corrections, No. CL21002033-00 (Washington Cnty. Cir. Ct.), are abbreviated "HR," followed by the page number in the lower right corner of each page.

Pursuant to § 2254(d), a federal court may grant relief with respect to a claim adjudicated on the merits in state court only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding," id. § 2254(d)(2). "In order for a federal court to find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citation omitted). Similarly, "[f]or a state court's factual determination to be unreasonable under § 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable." Winston v. Kelly, 592 F.3d 535, 554 (4th Cir. 2010) (citing Schriro v. Landrigan, 550 U.S. 465, 474 (2007)).

"When a state prisoner seeks § 2254 relief for ineffective assistance of counsel, [courts] apply the 'highly deferential' Strickland standard." Crockett v. Clarke, 35 F.4th 231, 242 (4th Cir. 2022) (quoting Owens v. Stirling, 967 F.3d 396, 412 (4th Cir. 2022)). In Strickland, the Supreme Court set forth a two-part test for evaluating claims of ineffective assistance in violation of the Sixth Amendment. "First, the petitioner must show counsel's performance was deficient and fell below an objective standard of reasonableness." Crockett, 35 F.4th at 242 (citing Strickland, 466 U.S. at 687–88). "Second, the petitioner must show prejudice, meaning 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Strickland, 466 U.S. at 694).

The court may conduct the analysis in either order and need not consider both prongs if one is not satisfied. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

When assessing a claim of ineffective assistance through the lens of § 2254(d), the court's review is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); see also Woods v. Etherton, 578 U.S. 113, 117 (2016) ("[F]ederal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting Burt v. Titlow, 571 U.S. 12, 22 (2013)). "This double-deference standard effectively cabins [a federal court's] review to a determination of 'whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.'" Morva v. Zook, 821 F.3d 517, 528 (4th Cir. 2016) (quoting Harrington v. Richter, 562 U.S. 86, 105 (2011)).

### III. Discussion

#### A. Claim 1

In Claim 1, Canter asserts that defense counsel provided ineffective assistance by failing to invoke his right to a speedy trial. Canter faults counsel for "agreeing to" continuances and argues that counsel should have moved to dismiss the charges against him on speedy trial grounds. Written Pet. at 3.

In evaluating Canter's claims of ineffective assistance, this court must review the "last reasoned" state court decision, Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991), which, in this case, is the final order entered by the Circuit Court of Washington County on May 2, 2022. The state habeas court considered Canter's first claim of ineffective assistance on the merits

7

and concluded that Canter could not "meet the highly demanding standard set forth for such claims" in Strickland. HR at 564. At the outset, the state habeas court noted that Canter had stated under oath during his plea colloquy that "he was satisfied with the services of his attorneys" and that Canter had "not averred any reason why he should not be bound by these statements." Id. (citing Anderson v. Warden, 221 Va. 511, 515, 281 S.E.2d 885, 888 (1981) (holding that "the truth and accuracy of representations made by an accused as to the adequacy of his court-appointed counsel . . . will be considered conclusively established by the trial proceedings, unless the prisoner offers a valid reason why he should not be permitted to controvert his prior statements"). The state habeas court further found, "apart from Anderson," that Canter "personally signed a waiver of his state and federal speedy trial deadlines caused by any continuances" and that he could not "satisfy either prong required by Strickland." Id. at 565. Having reviewed the record, the court concludes that Canter has not shown that the state habeas court's decision was based on an unreasonable determination of the facts or that it involved an unreasonable application of the Strickland test.

The record reflects that defense counsel filed the first motion for a continuance on February 21, 2018, and that Canter signed a waiver dated February 23, 2018, which indicated that he had "received and reviewed a copy of the motion" and that he "agree[d] to waive state and federal constitutional and statutory speedy trial deadline calculations caused by any continuances." CCR at 177–80. While Canter now asserts that he signed the waiver "under duress as well as coercion," Written Pet. at 4, his conclusory assertions in this regard are contrary to his sworn statements during the plea colloquy conducted immediately prior to trial. As the state habeas court noted in its decision, Canter stated under oath that he was "entirely

8

satisfied" with the services provided by defense counsel. CCR at 1041. "Absent clear and convincing evidence to the contrary, a defendant is bound by representations he makes under oath during a plea colloquy." Fields v. Att'y Gen., 956 F.2d 1290, 1299 (4th Cir. 1992).

Moreover, a criminal defendant's express consent is not required before a continuance can be granted at the request of defense counsel. Although there are "certain fundamental rights" that must be personally waived by a defendant, the Supreme Court has recognized that "[s]cheduling matters are plainly among those for which agreement by counsel generally controls," since "only counsel is in a position to assess the benefit or detriment of [a trial] delay to the defendant's case." New York v. Hill, 528 U.S. 110, 114–15 (2000). "Likewise, only counsel is in a position to assess whether the defense would even be prepared to proceed any earlier." Id. at 115. Consequently, courts have uniformly held that a defendant's "personal consent" to a continuance is "not required." United States v. Robinson, 67 F.4th 742, 749–50 (5th Cir. 2023) (collecting cases); see also Fayson v. Sec'y, Fla. Dep't of Corr., 568 F. App'x 771, 774 (11th Cir. 2014) ("[C]ounsel was not deficient for moving for a continuance without Fayson's consent, because scheduling issues are the province of counsel."); Cejas v. Blanas, 366 F. App'x 763, 765 (9th Cir. 2010) ("Cejas argues that his counsel's actions cannot be held to waive his right to a speedy trial, and that the trial court should have requested his express permission for every continuance, but the Supreme Court has held that an attorney may waive his client's speedy trial right without express permission . . . .") (citing Hill, 528 U.S. at 114–15); Shearer v. Commonwealth, 9 Va. App. 394, 402, 388 S.E.2d 828, 832 (1990) ("Defense counsel may . . . request or concur in a continuance without the consent or presence of a defendant and a defendant will be bound by counsel's assent to the delay.").

9

The record reflects that Canter's court-appointed counsel had legitimate strategic reasons for seeking each of the continuances that he requested on behalf of Canter. Counsel moved to continue the trial from the original date of February 26, 2018, because Canter "was not indicted until the January 2018 term of the grand jury and there [had] not been sufficient time" to prepare for trial. CCR at 177. Counsel also informed the trial court that certain defense witnesses had relocated from Virginia and needed to be located and interviewed prior to trial, and that counsel required additional time to determine whether to request certain expert witnesses and file certain pretrial motions. Id. After the trial was continued to May 7, 2018, the trial court granted a second continuance requested by defense counsel to allow defense counsel time "to subpoena a material out-of-state witness." Id. at 181. Finally, after the trial was continued to August 27, 2018, the trial court granted a third continuance requested by defense counsel. Id. at 244. In seeking the final continuance, defense counsel advised the trial court that the defendant had not been able to locate an expert witness sufficiently qualified to testify regarding the physiological effects of LSD and that additional time was also necessary to transcribe the defendant's statement to police. Id. at 184. Canter has failed to overcome the presumption of reasonableness afforded to defense counsel's strategic decisions. See United States v. Runyon, 994 F.3d 192, 218 (4th Cir. 2020) ("When a lawyer makes a strategic decision, courts must indulge a 'strong presumption' that the decision was reasonable.") (quoting Strickland, 466 U.S. at 689); see also Stewart v. Nix, 972 F.2d 967, 970 (8th Cir. 1992) ("Generally, motions for a continuance pertain to trial tactics or conduct of the trial process and are largely left to trial counsel's discretion."). Canter has not shown that counsel's

decisions to request continuances were deficient, must less that the state habeas court unreasonably applied Strickland in concluding otherwise.

To the extent that Canter faults defense counsel for failing to move to dismiss the charges against him based on an alleged violation of his right to a speedy trial, Canter has also failed to show that the state habeas court's rejection of this claim involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts. In his state pleading, Canter asserted that defense counsel should have moved to dismiss the charges against him under Virginia Code § 19.2-243, since he was incarcerated for two years before being tried. The statute governing speedy trials in Virginia generally provides that a defendant in custody must be tried "within five months" from the date of a finding "that there is probable cause to believe that the accused has committed a felony." Va. Code Ann. § 19.2-243. However, the statute contains multiple exceptions. As relevant here, "[t]he provisions of [§ 19.2-243] shall not apply to such period of time as the failure to try the accused was caused . . . [b]y continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth." Id. (emphasis added). Thus, when a trial court grants a continuance at the request of defense counsel, any delay resulting from that continuance does not count toward the five-month limit. Shearer, 9 Va. App. at 402, 388 S.E.2d at 832.

In Canter's case, the Washington County Juvenile & Domestic Relations District Court found probable cause and certified the charges to the grand jury on November 9, 2017, and Canter was held continuously from that point forward. The case was originally set for trial on February 26, 2018, well within the five-month period prescribed by the state statute. Although

11

the trial did not actually begin until January 14, 2019, the entire period of delay was excludable under § 19.2-243, since it resulted from continuance motions filed by defense counsel. Thus, even if defense counsel had moved to dismiss the charges against Canter under § 19.2-243, the motion would have been unsuccessful, and "[c]ounsel is not required to engage in the filing of futile motions."[5] Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (quoting Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984)). Consequently, it was not objectively unreasonable for the state habeas court to deny Canter relief on this claim of ineffective assistance. For these reasons, Canter's first claim must be dismissed.

**B.     Claim 2**

In Claim 2, Canter asserts that defense counsel provided ineffective assistance by failing to request a fingerprint expert to test the firearm used to kill the victim. Canter raised the same claim in his state petition, and the state habeas court concluded that Canter failed to satisfy "either prong of Strickland." HR at 565. The state habeas court first noted that Canter had "not proffered the testimony of any expert to support his allegations" and that, "[w]ithout such a proffer, he [could not] demonstrate either deficient performance or prejudice under Strickland." Id. (citing Muhammad v. Warden, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) (finding petitioner's failure to proffer the names and anticipated testimony of the experts he

---

[5] The same is true for any motion based on Canter's constitutional right to a speedy trial. See Barker v. Wingo, 407 U.S. 514, 530–32 (1972) (setting forth the factors to be considered in evaluating a constitutional speedy trial claim, including the length of the delay, the reason for the delay, and whether the delay prejudiced the defendant's case). The two-year delay between Canter's arrest and trial was "not uncommonly long," the post-indictment delay resulted from defense counsel's requests for additional time to prepare for trial in a case involving serious charges, and Canter "has not specified how his case was in any way prejudiced by the delay." United States v. Hopkins, 310 F.3d 145, 150 (4th 2002) (concluding under similar circumstances that a district court did not err in finding that a defendant's constitutional right to a speedy trial was not violated). Thus, Canter has failed to show that defense counsel was ineffective for not seeking dismissal based on his constitutional right to a speedy trial.

alleged counsel should have consulted was fatal to his claim of ineffective assistance). The state habeas court further concluded that the outcome of the trial would not have been different, even if defense counsel had requested and retained a fingerprint expert:

> The Court finds that [Canter] claimed ownership of the firearm and [Canter] had gunshot residue on his right and left hands when tested less than 8 hours after the shooting. According to trial testimony, gunshot residue is typically found on a person's hands within four to six hours of handling a weapon. Although Canter testified that he had last used the gun two weeks before the incident, gunshot residue would not still be on his hands two weeks after firing. Accordingly, the result of the proceeding would not have been different.
>
> The Court finds the strength of the Commonwealth's case further supports the lack of Strickland prejudice. [Canter] confessed to the crime. He stated that the effects of L.S.D. wore off as early as the time he walked home from the party. A.L. texted Lamon that Canter was home sometime after 1:00 a.m., and Canter remembered speaking with A.L. when he returned home. Only Canter, Lamon, and A.L. knew where the firearm was located, but Lamon was not at the residence when A.L. was killed; he stayed at the party all night. Canter admitted to seeing A.L.'s body on the kitchen floor surrounded by blood. Then, he left and went to his mother's home. Investigators determined there were no random shots: each bullet hole had a corresponding wound. [Canter] had gunshot residue on his hands after the incident. Because the evidence was overwhelming, it would not have made a difference whether the firearm contained [Canter's] fingerprints.

Id. at 566–67.

The state habeas court's decision was not based on an unreasonable application of federal law or an unreasonable determination of the facts. The state habeas court correctly observed that Canter had not proffered the testimony of any expert to support his claim of ineffective assistance. "When a petitioner's ineffective assistance of counsel claim rests on trial counsel's failure to call particular witnesses, expert or otherwise, [the petitioner must make] 'a

13

specific proffer . . . as to what an expert witness would have testified."' Vandross v. Stirling, 986 F.3d 442, 452 (4th Cir. 2021) (quoting Goins v. Warden, Perry Corr. Inst., 576 F. App'x 167, 173 (4th Cir. 2014)). "A petitioner's failure to do so reduces any claim of prejudice to mere speculation and is fatal to his claim." Id. (internal quotation marks omitted); see also Bassette v. Thompson, 915 F.2d 932, 940 (4th Cir. 1990) ("The great failing of the appellant on his claim that other evidence should have been presented during the sentencing phase of his trial is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called."); Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced.").

The state habeas court also reasonably determined that the strength of the Commonwealth's evidence prevented Canter from satisfying the prejudice prong of the Strickland test. The Commonwealth presented evidence establishing that Canter claimed ownership of the handgun with which A.L. was shot and that he was found to have gunshot residue on both of his hands after the incident. CCR at 1267–1268, 1273, 1414, 1885, 2034. Although Sam Lamon also knew where the firearm was stored in the house that he shared with Canter and A.L., Canter admitted that Lamon was not at home when A.L. was killed. Id. at 1268–69, 1474. Additionally, during his police interview, Canter remembered speaking with A.L. before finding her on the floor in a pool of blood, and he told Detective Roop approximately fourteen times that he must have shot her. Id. at 1270–72; see also id. at 1946 ("I remember coming home now and I remember [A.L.] being there. And we talked for a second and everything was fine. And I don't know what happened. I think I accidentally shot

14

her."); id. at 1954 ("I feel like I'm the one responsible. I feel like I'm the one who did it."); id. at 1960 ("There's no other way that it could've happened . . . . I think I did accidentally shoot her."); id. at 1965 ("I never wanted to hurt her, but I did. I don't know why or how it transpired, but there's no other way it could've happened, it couldn't have happened any other way."); id. at 1975 ("I mean ultimately I think I accidentally shot her."). In light of the evidence pointing to Canter as the shooter, the state habeas court reasonably concluded that Canter failed to show that he was prejudiced by the failure to retain a fingerprint expert. Consequently, Canter's second claim of ineffective assistance must be dismissed.

## IV. Conclusion

For the reasons stated herein, the court will grant the respondent's motion to dismiss and dismiss Canter's petition. Additionally, because Canter has not "made a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. 28 U.S.C. § 2253(c)(3)(2). An appropriate order will be entered.

Entered: February 1, 2024

Michael F. Urbanski
Chief U.S. District Judge
2024.02.01 17:42:34 -05'00'

Michael F. Urbanski
Chief United States District Judge